## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

TRACIE COFFEY,
individually and on behalf of others
similarly situated,

      Plaintiff,

v.                                                    Case No. 5:24-cv-270-MMH-PRL

HIGHER EDUCATION LOAN
AUTHORITY OF THE STATE OF
MISSOURI, d/b/a MOHELA,

      Defendant.

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Higher Education Loan

Authority of the State of Missouri's Motion to Dismiss (Doc. 13; Motion), filed

on July 24, 2024. In the Motion, Defendant, Higher Education Loan Authority

of the State of Missouri (MOHELA), requests that the Court dismiss Plaintiff,

Tracie Coffey's, Class Action Complaint for Violations of the Telephone

Consumer Protection Act (Doc. 1; Complaint) for lack of subject matter

jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (Rule(s))

and for failure to state a claim under Rule 12(b)(6). See generally Motion. Coffey

filed a response in opposition to the Motion, see Plaintiff's Opposition to

Defendant's Motion to Dismiss (Doc. 24; Response), filed on September 23, 2024,

and also filed a notice of supplemental authority, <u>see</u> Notice of Supplemental Authority (Doc. 30; Notice), filed on November 19, 2024. Upon request by MOHELA (Doc. 31), briefing by each party (Docs. 31, 32), and leave of Court (Doc. 33), MOHELA responded to the Notice. <u>See</u> Defendant MOHELA's Response to Notice of Supplemental Authority (Doc. 34; Response to Notice), filed on December 11, 2024. Accordingly, this matter is ripe for review.

## I.    Background[1]

The factual allegations that form the basis of Coffey's claims in this action are simple. "MOHELA is a non-profit corporation created by the State of Missouri … ." Complaint ¶ 16. MOHELA finances and services federal student loans. <u>Id.</u> For months, dating back to at least October 2022, MOHELA "repeatedly called [Coffey] on her [cell phone] using an artificial or prerecorded voice." <u>Id.</u> ¶¶ 19, 23. The "calls contained pre-recorded collection messages." <u>Id.</u> ¶ 22. Coffey "did not give [MOHELA] prior express written consent to make these calls." <u>Id.</u> ¶ 19. Thousands of other people received similar unauthorized

---

[1] As explained in Section II.A., <u>infra</u>, MOHELA raises a facial challenge to the existence of subject matter jurisdiction over this action. Accordingly, in reciting the factual background, the Court accepts all factual allegations in the Complaint as true. <u>See</u> <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

pre-recorded collections calls from MOHELA. <u>Id.</u> ¶¶ 37–39. Coffey brings this action on behalf of herself and these similarly situated individuals. <u>Id.</u> ¶ 35.

In Count I of the Complaint, Coffey asserts a claim against MOHELA under the Telephone Consumers Protection Act (TCPA), alleging that the pre-recorded collection calls violate 47 U.S.C. § 227(b)(1)(A)(iii), entitling her and class members to statutory damages under 47 U.S.C. § 227(b)(3). <u>Id.</u> ¶¶ 60–65.[2] In Count II, Coffey asserts that MOHELA's alleged violations of the TCPA were knowing, entitling her and the class to increased statutory damages under 47 U.S.C. § 227(b)(3)(B) and 227(b)(3)(C). <u>Id.</u> ¶¶ 66–70. MOHELA seeks dismissal of both claims. <u>See generally</u> Motion. In support, MOHELA contends the Court lacks jurisdiction over this action because MOHELA enjoys sovereign immunity granted by the Eleventh Amendment and also under broader state sovereign immunity principles. <u>See id.</u> at 6–20. MOHELA also contends Coffey

---

[2] 47 U.S.C. § 227(b)(1)(A)(iii) provides that it is unlawful for "any person within the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]" In 2020, the Supreme Court held that the final exception, for collection of debts owed to the United States, was unenforceable as a content-based restriction and severed it from the rest of the statute. <u>Barr v. Am. Ass'n of Pol. Consultants, Inc.</u>, 591 U.S. 610 (2020).

fails to state a claim because MOHELA is not a "person" under the TCPA. See id. at 20–23.

## II.    Legal Standard

### A.    Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. See Lawrence, 919 F.2d at 1528–29; see also Jones v. Waffle House, Inc., Case No. 6:15-cv-1637-Orl-37DAB, 2016 WL 3231298, at *3 (M.D. Fla. June 13, 2016).[3][4] "Facial attacks on the complaint require the court merely to look and see if the

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[4] In the context of the waiver of federal sovereign immunity under the Federal Tort Claims Act, the Eleventh Circuit has held that sovereign immunity implicates subject matter jurisdiction. See Lawrence, 919 F.2d at 1528; see also Wis. Dep't of Corr. v. Schacht, 524 U.S. 381 (1998).

plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence, 919 F.2d at 1529 (cleaned up). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (internal quotation marks and citation omitted).

Here, MOHELA does not address whether it intends to raise a facial or a factual attack, and indeed, is silent as to what standard it believes should be applied to its Rule 12(b)(1) challenge. See Motion at 4–5. Notably, however, MOHELA does not offer affidavits or testimony in support of the Motion. Instead, MOHELA relies on a bald assertion and a statement in a Supreme Court opinion to make factual claims about where MOHELA's surplus revenues go, a topic not discussed in any way in the Complaint. According to MOHELA:

> [T]he State of Missouri has requested, and MOHELA has provided, nearly $100 Million in scholarships and grant funding between 2010 and 2023. See Biden[ v. Nebraska], 143 S. Ct. [2355,] 2366 [(2023)] ("[MOHELA's] profits help fund education in Missouri: MOHELA has provided $230 million for development projects at Missouri colleges and universities and almost $300 million in grants and scholarships for Missouri students.") (citing MOHELA's financial statement).

Id. at 16 (final alteration in original); see also id. at 18 ("[A] judgment could impair … MOHELA's provision of tens of millions of dollars to the State for grants and scholarships."). Yet Coffey, in observing that facial review is

appropriate, mistakenly states that MOHELA "has not … raised factual assertions outside the pleadings." Response at 6. More vexingly, on the very same page and elsewhere in her Response, Coffey offers her own factual assertions—from inaccessible extrinsic sources—as to where MOHELA's money goes. See id. at 6 n.3 (providing a broken web link to MOHELA's financial statements); id. at 4 n.1 (providing a link to an inaccessible local file ostensibly containing MOHELA's financial statements); id. at 5–6 (repeatedly citing the aforementioned inaccessible financial statements in making factual assertions about MOHELA's finances). As explained in Section III.A.3. at n.7, infra, MOHELA's factual assertions as to its provision of scholarship and grant funding are immaterial to resolving the Motion. As such, to the extent the parties dispute how much of MOHELA's surplus revenues go toward funding grants and scholarships, the Court need not resolve this dispute and applies the standard applicable to a facial attack.[5]

---

[5] Because the parties both seem to ultimately rely on the same financial statements when making factual assertions about how MOHELA spends money, it could be appropriate for the Court to take judicial notice of the information in those statements, which appear to be matters of public record. But because the Court concludes the facts allegedly established by the financial statements would not change the outcome, and in light of the fact that neither party has requested that the Court take judicial notice or even provided an accessible copy of the financial records, the Court declines to take judicial notice of the records at this time.

B.    Rule 12(b)(6) Standard

As in resolving a facial attack under Rule 12(b)(1), in ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 & n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citations omitted); <u>see also</u> <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotation marks and citation omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  Discussion

#### A.    Sovereign Immunity

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. The Supreme Court has long recognized that sovereign immunity sweeps much broader than the literal text of the Amendment. See, e.g., Allen v. Cooper, 589 U.S. 248, 254 (2020) ("[T]his Court has long understood that Amendment to stand not so much for what it says as for the broader presupposition of our constitutional structure which it confirms. … [The] fundamental aspect of [state] sovereignty constrains federal judicial authority." (internal quotation marks and citations omitted)).[6] Although sovereign immunity is jurisdictional, it is different from

---

[6] MOHELA argues that the Eleventh Amendment and "sovereign immunity principles" independently bar Coffey's claims. See Motion at 2. The Court finds no authority to support the proposition that analysis based on the Eleventh Amendment is any different from or

other kinds of subject matter jurisdiction in that it is waivable. <u>See</u> <u>Schacht</u>, 524 U.S. at 389. While the Eleventh Circuit does not seem to have explicitly decided the issue, MOHELA acknowledges that it has the burden of establishing that it is entitled to sovereign immunity. <u>See</u> Motion at 10; <u>see also</u> <u>Schacht</u>, 524 U.S. at 389 ("The Eleventh Amendment … does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so."); <u>Good v. Dep't of Educ.</u>, 121 F.4th 772, 788 (10th Cir. 2024) ("[W]e conclude that MOHELA has not met its burden to show that it is an arm of the State of Missouri."). Notably, Eleventh Amendment sovereign immunity applies not just when the State itself is sued, but also when the defendant is an arm of the State. <u>Manders v. Lee</u>, 338 F.3d 1304, 1305–06 (11th Cir. 2003).

Courts in the Eleventh Circuit apply a four-factor test to determine whether a defendant is an arm of the State such that it is protected by sovereign immunity. <u>See</u> <u>id.</u> at 1309. As stated in <u>Manders</u>, courts look to "(1) how state

---

independent of the analysis under "sovereign immunity principles." On the contrary, rather than treating the Eleventh Amendment's text as the sole ground for sovereign immunity, the Supreme Court has conducted sovereign immunity analysis in accordance with the background principles of sovereign immunity that the Founders understood to govern the States' amenability to suit in federal court. <u>See</u> <u>Hans v. Louisiana</u>, 134 U.S. 1, 10–12 (1890). These background principles apply even if the action does not fall within the literal text of the Amendment. <u>See</u> <u>id.</u> at 16 (explaining that, in all cases of sovereign immunity in which the State's consent was not at issue, "the effort was to show … that the suits were not against the [S]tate … , but against the individuals"); <u>see also</u> <u>Allen</u>, 589 U.S. at 254.

law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. at 1308. In looking at the function the defendant was engaged in, the question "'is not what … powers [state entities] have, but for whom [they] exercise that power.'" U.S. ex rel. Lesinski v. S. Fla. Water Mgmt. Dist., 739 F.3d 598, 604 (11th Cir. 2014) (citation omitted) (omission, alterations, and emphasis in original). And while sovereign immunity is a question of federal law, because the factors require an inquiry into the State's relationship with the entity, "the federal question can be answered only after considering provisions of state law." Manders, 338 F.3d at 1309. Accordingly, the Court begins with a review of MOHELA's enabling legislation.

1.      MOHELA's Structure and Operations

MOHELA was created and is governed by the Missouri Higher Education Loan Authority Act, Mo. Stat. §§ 173.350 et seq. (the Act). The Act specifies that MOHELA was created:

> to assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both, and … to support the efforts of public colleges and universities to create and fund capital projects, and … to support the Missouri

> technology corporation's ability to work with colleges and universities in identifying opportunities for commercializing technologies, transferring technologies, and to develop, recruit, and retain entities engaged in innovative technologies … .

Id. § 173.360. The Act describes MOHELA as "a body politic and corporate" and "a public instrumentality" or "separate public instrumentality" that performs "an essential public function." Id.; id. § 173.415. As such, MOHELA's income and properties are "exempt from all taxation in the [S]tate of Missouri." Id. § 173.415.

As to MOHELA's governance, it is composed of seven members. Id. § 173.360. Five are "appointed by the governor by and with the advice and consent of the senate," the sixth is "a member of the [Missouri] coordinating board [for higher education]," and the last is "the commissioner of higher education." Id. §§ 173.360, 173.355. "Two of the appointed members [must] be representatives of higher education institutions, one public and one private, in Missouri, two of the appointed members [must] be representatives of lending institutions in Missouri, and one of the appointed members [must] be representative of the public." Id. § 173.360. Members serve for five years, see id., and are immune from suit and personal liability for lawful actions undertaken for MOHELA, see id. § 173.385(3). "Any member of [MOHELA] may be removed by the governor for misfeasance, malfeasance, willful neglect of duty, or other cause after notice and a public hearing … ." Id. § 173.360.

MOHELA "may appoint an executive director who [must] not be a member of the authority and who shall serve at its pleasure." Id. § 173.370(1). The executive director's compensation is set by MOHELA, which also determines the director's powers and duties. Id. With MOHELA's approval, the executive director "may hire such additional employees as may be needed to carry out the functions and purposes of the authority." Id. § 173.370(2). MOHELA's meetings are open to the public. Id. § 173.365. Indeed, MOHELA's "proceedings and actions … [must] comply with all statutory requirements respecting the conduct of public business by a public agency." Id. And MOHELA is "assigned to the department of higher education and workforce development," (the Department), and must "annually file with the director of [the] [D]epartment a report of its previous year's income, expenditures and bonds or other forms of indebtedness issued and outstanding." Id. § 173.445.

Turning to MOHELA's powers, it is vested with various enumerated powers "together with all powers incidental thereto or necessary for" their performance. Id. § 173.385(1). Broadly speaking, MOHELA's powers are to operate as an originator and servicer of student loans both in and outside of Missouri; to collect revenue from that activity; to use some of that revenue to contribute to a segregated state fund (the Lewis and Clark Discovery Fund, or "Fund"); and to use other revenue "[t]o create, acquire, contribute to, or invest

in any type of financial aid program that provides grants and scholarships to students." <u>See generally</u> <u>id.</u> MOHELA's powers also include "perpetual succession as a body politic and corporate" and the powers to adopt bylaws; "[t]o sue and be sued and to prosecute and defend"; "[t]o maintain an office" in Missouri; to sell student loan notes; to transfer assets to the Fund; "[t]o make and execute contracts"; "to collect reasonable fees and charges in connection with making and servicing its loans" and other instruments; to invest funds; to manage personal property; and to "enter into agreements or other transactions" with any government or corporate entity. <u>Id.</u> § 173.385(1)(1)–(1)(19). While MOHELA is empowered to issue bonds and designate their interest rates and other terms, MOHELA can only issue revenue bonds, and bond revenue can only be used to finance or purchase student loans. <u>Id.</u> §§ 173.385(1)(6), 173.390, 173.405, 173.410. And when MOHELA issues bonds, it can sell the loans the bonds financed unless the loans have been guaranteed by the State. <u>Id.</u> §§ 173.385(1)(7), 173.385(1)(8), 173.110.

MOHELA's assets and liabilities are largely separate from those of the State of Missouri. MOHELA's assets are its own, not Missouri's, and they cannot be used to pay off debts of the State. <u>Id.</u> §§ 173.386, 173.425. MOHELA is self-funded. Indeed, in the Motion, MOHELA concedes that it "does not receive funds directly from the State." Motion at 15. As with its other

obligations and liabilities, MOHELA's bonds are secured and repaid only from its own revenues and investment income unless otherwise specified by a bond resolution. Mo. Stat. §§ 173.390, 173.405, 173.410, 173.420. Notably, a default on a MOHELA-issued bond "shall not … obligate the [S]tate or any political subdivision thereof to levy any form of taxation … or to make any appropriation for their payment." Id. § 173.410. True, MOHELA was obligated to distribute $350 million to the Fund on a particular schedule from 2007 until 2013. Id. § 173.385(2). And while MOHELA was authorized to delay particular distributions to the Fund if necessary, MOHELA could not modify the date by which all distributions had to be made without approval from the Missouri commissioner of higher education. Id. The general assembly and other parties can also put money into the Fund. Id. § 173.392(1). But money in the Fund is not considered state funds. Id. And while the general assembly can appropriate money from the Fund, it can only do so "[t]o support funding of capital projects at public colleges and universities," "[t]o support funding for the Missouri technology corporation's ability to work with colleges and universities in identifying opportunities for commercializing technologies … , and to develop, recruit, and retain entities engaged in innovative technologies." Id. § 173.392(2). Excess money in the Fund does not revert to Missouri's general revenue fund. Id. § 173.392(3).

- 14 -

    2.    <u>Biden v. Nebraska</u> and the Tenth Circuit's Decision in <u>Good v. Department of Education</u>

As a preliminary matter, MOHELA urges the Court to conclude that the Supreme Court's 2023 decision <u>Biden v. Nebraska</u> resolves the question of whether MOHELA is entitled to sovereign immunity. <u>See</u> Motion at 6–8. In <u>Biden</u>, the Supreme Court held that Missouri, in an action against the federal government, satisfied standing's injury-in-fact requirement when complaining about President Biden's cancelation of billions of dollars of student loan debt. <u>Biden</u>, 143 S. Ct. at 2365–66. The Court explained that a diminution of MOHELA's revenues would stifle MOHELA's "efforts to aid Missouri college students" by preventing MOHELA from sending its profits to the Fund and to grants and scholarships for Missouri students. <u>Id.</u> at 2366. In the Court's view, "[t]his acknowledged harm to MOHELA in the performance of its public function [was] necessarily a direct injury to Missouri itself." <u>Id.</u> The Supreme Court determined that despite MOHELA's corporate form, "MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." <u>Id.</u>

Only one circuit court, the Tenth Circuit, has addressed the question of whether MOHELA is entitled to sovereign immunity. <u>See</u> <u>Good</u>, 121 F.4th at 787. Despite the language from the <u>Biden</u> decision, the Tenth Circuit held that

<u>Biden</u> does not resolve the question of whether MOHELA is entitled to sovereign immunity. <u>Id.</u> at 796. The court stated, "[t]o be sure, <u>Biden</u> certainly stands for the proposition that there is enough of a link between MOHELA and Missouri for an injury to the former to constitute an injury to the latter. But … standing is an analytically distinct concept from the Eleventh Amendment question before us here." <u>Id.</u> at 797 (internal quotation marks and citation omitted). And indeed, in <u>Biden</u>, the Supreme Court itself noted that "a public corporation can count as part of the State for some but not other purposes." <u>Biden</u>, 143 S. Ct. at 2368 n.3 (internal quotation marks and citation omitted). Like the Tenth Circuit, this Court concludes that <u>Biden</u> does not resolve the question of whether MOHELA benefits from Missouri's sovereign immunity. Rather, the Court must turn to the four factors set forth in <u>Manders</u>: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." <u>Manders</u>, 338 F.3d at 1309.

Before applying the <u>Manders</u> factors, however, it is instructive to consider the Tenth Circuit's sovereign immunity analysis in <u>Good</u>. In <u>Good</u>, the Tenth Circuit employed its two-step sovereign immunity test and held that MOHELA was not entitled to sovereign immunity for a claim under the Fair Credit Reporting Act. <u>Good</u>, 121 F.4th at 787–822. At the first step, the Tenth Circuit

applied the four "Steadfast" factors. Id. at 798–818 (relying on factors set forth in Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250 (10th Cir. 2007)). Like the first Manders factor, the first Steadfast factor considers how the entity is characterized under state law. Id. at 798. "The focus of this factor is on how state statutes and other sources of state law characterize the entity." Id. at 798–99. The Tenth Circuit concluded that this factor supported a finding that MOHELA was an arm of Missouri. Id. at 799. Similar to the second Manders factor, the second Steadfast factor examines "the entity's autonomy." Id. at 802. While this factor "spans a broad range of considerations," ultimately, the key question in the Tenth Circuit "is whether, in light of the entire relationship between the entity and the [S]tate, the entity retains substantial autonomy or if it operates with guidance or interference from the [S]tate." Id. (internal quotation marks, omission, and citation omitted). The court concluded that this factor "weigh[ed] against arm-of-the-[S]tate status." Id. at 809.

The third and fourth Steadfast factors diverge from the Eleventh Circuit's Manders factors. The Tenth Circuit's third factor looks at the entity's "finances," essentially combining the third and fourth Manders factors. Compare id. at 809–17, with Manders, 338 F.3d at 1323–28. In the Tenth Circuit, this factor "requires an inquiry into the independence of the entity's finances and the extent to which the [S]tate financially supports the entity." Good, 121 F.4th at

809. As to this factor, the Tenth Circuit concluded that the independence of MOHELA's finances "weigh[ed] strongly against arm-of-the-State status." <u>Id.</u> at 817. The Tenth Circuit's fourth factor is the entity's concern with state or local affairs, which is not expressly a <u>Manders</u> factor but presents some of the same considerations as the first <u>Manders</u> factor. <u>Id.</u> at 817–18; <u>see also</u> <u>Manders</u>, 338 F.3d at 1319 (considering, under the first <u>Manders</u> factor, the geographic scope of a Georgia sheriff's authority and whether the sheriff performed duties in service of statewide functions). As to this final factor, the Tenth Circuit concluded that MOHELA's statewide focus weighed in favor of arm-of-the-State status. <u>Good</u>, 121 F.4th at 817–18. Because the <u>Steadfast</u> factors pointed in different directions, the Tenth Circuit proceeded to the second step of its analysis, in which the court looked to whether imposing liability would undercut the "twin aims" of sovereign immunity: protecting state dignitary interests and treasuries. <u>Id.</u> at 818. The Tenth Circuit based its determination that MOHELA was not entitled to sovereign immunity on the conclusion that subjecting MOHELA to potential liability would not undercut these twin aims. <u>Id.</u> at 818–22. Notably, the Eleventh Circuit has rejected the use of these "twin aims" as a consideration or tiebreaker. <u>Lake v. Skelton</u>, 840 F.3d 1334, 1344 (11th Cir. 2016).

3.    Applying the <u>Manders</u> Factors

A review of Eleventh Circuit caselaw reflects that, in evaluating the first <u>Manders</u> factor, courts in this circuit look to considerations including how the enabling legislation describes the entity, the stated purposes of the entity, on whose behalf the entity performs its functions, whether the entity is subject to state or local control, how employees of the entity are described, the powers of the entity, and the entity's relationships to other government entities like municipalities and counties. <u>See, e.g.</u>, <u>Pellitteri v. Prine</u>, 776 F.3d 777, 780 (11th Cir. 2015) (considering how the Georgia constitution labeled a sheriff, whether the sheriff performed duties on behalf of Georgia or the county, whether the sheriff was subject to local control, and from where the sheriff derived its authority); <u>Lightfoot v. Henry Cnty. Sch. Dist.</u>, 771 F.3d 764, 769–71 (11th Cir. 2014) (considering how Georgia's code and courts labeled a school board and how the Georgia constitution treated the school board in relation to municipalities and counties); <u>Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.</u>, 421 F.3d 1190, 1192–93 (11th Cir. 2005) (<u>per curiam</u>) (considering how Florida statutes defined a community college, the relationship between community college leadership and the State, and for whom—the State or local interests—the community college exercised its authority). With respect to how state law defines MOHELA, the Court readily concludes, as did the Tenth

- 19 -

Circuit in <u>Good</u>, that this factor weighs in favor of finding that MOHELA is an instrumentality of Missouri. <u>See</u> <u>Good</u>, 121 F.4th at 798–802. The Act describes MOHELA as "a body politic and corporate" and "a public instrumentality" that performs "an essential public function." Mo. Stat. §§ 173.360, 173.415. MOHELA is "assigned" to the Department, a Missouri state agency. <u>Id.</u> § 173.445. MOHELA's meetings are open to the public, and it must "comply with all statutory requirements respecting the conduct of public business by a public agency." <u>Id.</u> § 173.365. These statutory signals weigh in MOHELA's favor as to this first factor.

But turning to the second factor, the State's degree of control over MOHELA, the Court concludes (again like the Tenth Circuit in <u>Good</u>) that MOHELA's independence weighs slightly in favor of a conclusion that MOHELA is not an arm of Missouri. A review of Eleventh Circuit caselaw shows that, in evaluating this factor, courts in this circuit consider things such as the appointment process for entity leadership, the State's oversight over the entity's decisionmaking, structural limits on the entity's discretion, the State's training requirements, consequences for failure to comply with the State's requirements, the State's approval of budgets, and whether the entity is subject to local control. <u>See, e.g.</u>, <u>Williams</u>, 421 F.3d at 1193–94 (considering the facts that a Florida state board exercised control over a community college and that the

Florida governor appointed community college leaders, who were confirmed by the Florida senate); <u>Manders</u>, 338 F.3d at 1320–22 (considering the facts that Georgia law mandated a sheriff partake in annual trainings, that only the Georgia governor could discipline the sheriff, and that the county had no control over the sheriff); <u>Lightfoot</u>, 771 F.3d at 771–75 (considering the facts that a county board of education controlled a Georgia school district, that the school board was elected locally, that the Georgia constitution stated that education was subject to local control, and that the school district had autonomy and broad powers); <u>Lesinski</u>, 739 F.3d at 603–04 (considering the facts that the board of a state water management district was appointed by the Florida governor and confirmed by the Florida senate, that the district's budget was reported to the heads of various state executive and legislative chairs and subject to approval by the governor, that a state executive agency had authority to review the district's actions, and that the district exercised powers on the State's behalf). Here, while it is true that MOHELA's members are appointed by the governor or by Missouri state agencies, Mo. Stat. § 173.360, this is not dispositive because "'the power to appoint is not the power to control.'" <u>See</u> <u>Good</u>, 121 F.4th at 803 (quoting <u>Hennessey v. Univ. of Kans. Hosp. Auth.</u>, 53 F.4th 516, 537 (10th Cir. 2022)). This is particularly true here because MOHELA's members serve longer terms than the state officer who appoints them. Mo. Stat. § 173.360. And

indeed, MOHELA's members select the executive director, who is the one who directs and staffs MOHELA. Id. § 173.370. While the governor does have the power to remove members, removal is for cause. Id. § 173.360. While not dispositive, the State's control over MOHELA's members could tilt consideration of this factor slightly in MOHELA's favor. See Good, 121 F.4th at 804, 804 n.19 (noting that the governor's removal power, "though it is limited[,] weighs in favor of arm-of-the-[S]tate status," even though an at-will removal power "would weigh more strongly against autonomy").

However, cutting against MOHELA as to the second factor is the fact that MOHELA can independently engage in all manner of ordinary business-like activities without Missouri's control or supervision. For example, MOHELA can adopt its own bylaws to regulate its affairs, appoint its own director, enter contracts, purchase and issue loans, and prosecute and defend lawsuits. Mo. Stat. § 173.385(1)(1)–(1)(19). As to the requirement that MOHELA make annual financial reports, id. § 173.445, this does not move the needle either way because reporting, without more, is primarily a ministerial requirement that does not demonstrate actual control by the State. Accordingly, considerations relevant to the State's control demonstrate elements of independence and elements of control; on balance, the Court concludes that, in its debt-collection

efforts, MOHELA looks more like a private nonprofit or municipality than a state agency. Thus, this factor weighs against a finding of sovereign immunity.

The third factor, where MOHELA derives its funds, strongly favors a finding that MOHELA is not an arm of Missouri. A review of Eleventh Circuit authority shows that, in evaluating this factor, courts in this circuit look to considerations including whether the State controls the entity's budget, whether the entity produces its own revenue, whether the entity has the power to tax, and whether the entity can issue bonds without the State's approval. See, e.g., Williams, 421 F.3d at 1193 (considering the facts that Florida must approve a community college's budget, that the college must submit budget requests, and that the college derived funding from legislative appropriations); Manders, 338 F.3d at 1323–24 (considering the facts that, as to the functions at issue, Georgia funded the sheriff and that while the county also provided funds, it did so by state mandate and could not control how the sheriff spent the funds); Lesinski, 739 F.3d at 604–05 (considering the facts that a water management district could levy ad valorem taxes, issue bonds, buy land, and borrow money on its own, and weighing these indicia of financial independence against the fact that the State also provided significant funding). In considering this factor, the Court must take particular care to evaluate state law in relation to the function at issue. See Manders, 338 F.3d at 1323 (evaluating whether "state

funds are involved … in the particular functions [of the entity] at issue"). Here, although MOHELA is authorized to accept appropriations and other external funding, Mo. Stat. § 173.385(1)(10), the Act contemplates and MOHELA concedes that MOHELA is sustained primarily by revenue it generates through its business operations. See id.; Motion at 15 ("MOHELA does not receive funds directly from the State."). Moreover, aside from MOHELA's obligation to contribute to the Lewis and Clark Discovery Fund—an obligation that MOHELA might have already fulfilled—Missouri does not direct how MOHELA spends its money. See Mo. Stat. § 173.385(2).[7] Moreover, money in the Fund is not considered Missouri's funds and cannot revert to Missouri's general fund. Id. § 173.392(1). And while MOHELA argues that this factor favors immunity because MOHELA's powers to issue bonds are circumscribed

---

[7] As explained in Section II.A., supra, MOHELA asserts that, at the State's direction, it has provided hundreds of millions of dollars in scholarships and grant funding to Missouri students. See Motion at 16. MOHELA contends that this spending represents a "financial obligation" that Missouri "imposed" on MOHELA. Id. at 16. But by MOHELA's own admission, this funding was issued by the request, not the mandate, of the State. See id. Notably, these factual assertions lie outside what the Court may properly consider in a facial attack to subject matter jurisdiction. See Lawrence, 919 F.2d at 1529. And, MOHELA does not identify, based on Coffey's allegations in the Complaint or the provisions of the Act, any adverse actions the State could have taken against MOHELA had it refused the State's purported request. Accordingly, for the purposes of resolving this facial attack, the Court concludes that MOHELA's funding of grants and scholarships is not an obligation imposed by Missouri. As such, the amount of funding MOHELA chooses to direct toward this purpose does not bear on this third factor. See Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 51 (1994) ("The proper focus is not on the use of profits or surplus, but rather is on losses and debts.").

by state requirements, this is only relevant to the function at issue here insofar as MOHELA cannot issue bonds to finance its debt-collection efforts. Accordingly, the limitations on MOHELA's bond-issuing authority are hardly meaningful given MOHELA retains broad powers to collect funding from other activities, including investments and fees. Compare id. §§ 173.385(1)(6)–(1)(8), with id. § 173.385(1)(12). And importantly, MOHELA's discretion to collect fees when servicing loans is plenary. Id. § 173.385(1)(12). As such, this factor weighs in favor of finding that MOHELA is not an arm of Missouri.[8]

The fourth factor requires the Court to determine who is responsible for a judgment against MOHELA. A direct drain on the state treasury is not a prerequisite; functional liability can be sufficient to satisfy this factor. See, e.g., Manders, 338 F.3d at 1324–27. Nevertheless, weighing this factor as to MOHELA presents little difficulty: the Act carefully and repeatedly specifies that both MOHELA's assets and its liabilities are its own. Mo. Stat. §§ 173.405,

---

[8] MOHELA also cites to a district court decision from this circuit for the proposition that because MOHELA's "ability to earn revenue arises from and depends on the authority granted to it" under the Act, the third Manders factor weighs in favor of arm-of-the-State status. See Motion at 16–17 (citing Gowens v. Capella Univ., Inc., No. 4:19-cv-362-CLM, 2020 WL 10180669, at *3 (N.D. Ala. June 1, 2020)). The court in Gowens cites no authority to support its conclusion, which would seem to apply equally to every entity reliant on state authority for incorporation, including non-immune entities like counties and municipalities. See Good, 121 F.4th at 811 n.26 ("This argument misses the mark. It is a truism that a state-created entity would necessarily derive its revenues from its statutory mandate."); Hess, 513 U.S. at 47 ("[U]ltimate control of every state-created entity resides with the State … .").

173.410, 173.420. While it is conceivable that a significant judgment against MOHELA could quiet its eagerness to provide grants and scholarships to Missouri students under § 173.385(1)(19), MOHELA fails to identify any source of obligation for Missouri to fill whatever gap in this funding an adverse judgment against MOHELA might create. In this facial attack, MOHELA simply has not met its burden to show that it "'is so structured that, as a practical matter, if [it] is to survive, a judgment must expend itself against state treasuries … .'" See Hess, 513 U.S. at 50 (quoting Morris v. Wash. Metro. Area Transit Auth., 781 F.2d 218, 227 (D.C. Cir. 1986)). Indeed, "[t]here is no such requirement where the agency is structured … to be self-sustaining." Id.

In summary, the Court concludes that of the four Manders factors, only the first weighs in favor of finding that MOHELA is entitled to sovereign immunity for its debt-collection activities. On balance, the Court concludes that MOHELA has not met its burden in a facial attack under Rule 12(b)(1) to establish that it shares in Missouri's sovereign immunity. While Missouri law does define MOHELA in terms that suggest it is an arm of Missouri, MOHELA's independent finances and decisionmaking predominate, and MOHELA has not explained how an adverse judgment against it would threaten the Missouri

treasury.[9] Accordingly, the Motion is due to be denied to the extent that MOHELA contends the Court lacks subject matter jurisdiction.

B.    MOHELA's "Personhood" Under the TCPA

Turning to the merits, MOHELA argues that the Complaint must be dismissed because it is not a "person" under the TCPA. See Motion at 20–23. Contending that "person" does not include States, sovereigns, or "governmental entities," MOHELA largely parrots its argument as to sovereign immunity. See id. at 20–23. Having already concluded that MOHELA is not an arm of Missouri, the Court considers whether "person" under the TCPA can include "governmental entities" like MOHELA. In light of the foregoing analysis concluding that MOHELA is not protected by Missouri's sovereign immunity, the Court concludes that MOHELA is a "person" for purposes of the TCPA.

Federal law defines a "person" under Chapter 47, of which the TCPA is a part, to include "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). The edition of Black's Law Dictionary

---

[9] In concluding that MOHELA does not enjoy sovereign immunity for its debt-collection activities, the Court joins the majority of the (few) courts to have reached the issue of MOHELA's sovereign immunity. See Good, 121 F.4th 772; Pellegrino v. Equifax Info. Servs., LLC, 709 F. Supp. 3d 206 (E.D. Va. 2024); Dykes v. Mo. Higher Educ. Loan Auth., No. 4:21-cv-83-RWS, 2021 WL 3206691 (E.D. Mo. July 29, 2021); Perkins v. Equifax Info. Servs., LLC, No. SA-19-CA-1281-FB, 2020 WL 13120600 (W.D. Tex. May 1, 2020) (report and recommendation); but see Gowens, 2020 WL 10180669; In re Stout, 231 B.R. 313 (Bankr. W.D. Mo. 1999).

contemporaneous with the TCPA's enactment defines a corporation as "[a]n artificial person or legal entity created <u>by</u> or under the authority of the laws of a state." CORPORATION, Black's Law Dictionary (6th ed. 1990) (emphasis added). The Supreme Court has observed that since at least 1787, "municipal corporations and private ones were simply two species of 'body politic and corporate,' treated alike in terms of their legal status" and ability to "do all other acts as natural persons may." <u>Cook Cnty., Ill. v. U.S. ex rel. Chandler</u>, 538 U.S. 119, 125–27 (2003) (internal quotation marks and citations omitted). Here, the act which created MOHELA defines it as "a body politic and corporate" with "perpetual succession," bringing MOHELA squarely within the ambit of the TCPA. <u>See</u> Mo Stat. §§ 173.385(1)(1), 173.360. Likewise, in <u>Biden</u>, the Supreme Court referred to MOHELA as a "public corporation." <u>Biden</u>, 143 S. Ct. at 2365. That the State of Missouri incorporated MOHELA does not make MOHELA less of a corporation.[10] MOHELA has pointed to no context within the TCPA that would suggest Congress intended for some other understanding of the term

---

[10] To be sure, that the State incorporated MOHELA does make MOHELA different from municipal corporations, which are typically incorporated by residents. This difference leads some to term State-incorporated entities like MOHELA "quasi corporations," but this difference does not compel the conclusion that such entities are not statutory "persons." <u>See</u> <u>Cook Cnty.</u>, 538 U.S. at 127 n.7 ("While the liability of quasi corporations at common law may have differed from that of municipal corporations, … both were treated equally as legal 'persons.'" (citation omitted)).

"corporation" to apply.[11] As such, MOHELA is a "person" for purposes of the TCPA, which explicitly defines the term to include corporations.[12]

Accordingly, it is

**ORDERED:**

1. Defendant Higher Education Loan Authority of the State of Missouri's Motion to Dismiss (Doc. 13) is **DENIED**.

---

[11] MOHELA relies on another case from the Middle District of Florida for the proposition that the TCPA does not apply to "governmental entities." See Motion at 22 (citing Lambert v. Seminole Cnty. Sch. Bd., No. 6:15-cv-78-Orl-18DAB, 2016 WL 9453806 (M.D. Fla. Jan. 21, 2016)). In Lambert, the court held that a school board was not subject to the TCPA. But this case is not helpful to MOHELA because the court took for granted that the school board was a sovereign entity without engaging in any analysis as to why that was so. See Lambert, 2016 WL 9453806, at *2–4. Having already concluded that MOHELA is not sovereign, the reasoning of Lambert does not apply.

[12] MOHELA also cites to a statement in Barr, where the plurality opinion stated in a footnote that "[t]he robocall restriction applies to 'persons,' which does not include the Government itself." Barr, 591 U.S. at 615 n.1. In the context of the opinion, this footnote merely provides background information on the scope of the TCPA and the plurality's broad statement there had no apparent bearing on the Supreme Court's decision. MOHELA's citations to FCC guidance are likewise unhelpful, as the FCC itself has distinguished between state governments and non-sovereign incorporated entities to which States delegate power. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 20-182, CG Docket No. 02-278, at 11–15 (2020) ("[L]ocal government entities, including counties, cities, and towns, are 'persons' within the meaning of [§] 227(b)(1) … .").

2. MOHELA must answer the Complaint in accordance with the Rules.

   **DONE AND ORDERED** in Chambers this 11th day of March, 2025.


   **MARCIA MORALES HOWARD**
   United States District Judge



lc33

Copies to:
Counsel of Record